IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
Civil Action No. 5:21-cv-25

| | |
|---|---|
| JERRY WAYNE BAXTER, § § Plaintiff, § § v. § § RANDALL LEE NEAL, SR. in his individual and official capacity; BRIAN MATTHEW BLACK, in his individual and official capacity; JOSHUA LEE CRAIG, in his individual and official capacity; and CHUCK LEE, in his individual and official capacity, § § § § § § § § § § Defendants. § | **COMPLAINT** |

Plaintiff brings this action against the Defendants for compensatory damages and punitive damages, pursuant to: 42 U.S.C. §§ 1983 and 1988; the Fourth and Fourteenth Amendments to the U.S. Constitution; the common law of the State of North Carolina, for assault and battery, and for willful, wanton and malicious conduct; and pursuant to Article I, §§ 19 and 21 of the North Carolina Constitution.

## JURISDICTION AND VENUE

1.  This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331, 1343 and 1367.

2.  Venue is properly set in the Western District of North Carolina pursuant to 28 U.S.C. § 1391, as the causes of action alleged herein arise from events or omissions occurring in this district, and, upon information and belief, all of the Defendants reside in North Carolina and one or more of them resides in this district.

## PARTIES

3. Plaintiff Jerry Wayne Baxter is and at all relevant times has been a citizen and resident of Lincoln County, North Carolina.

4. Upon information and belief, Defendant Randall Lee Neal, Sr. (hereinafter, "Defendant Neal") is and at all relevant times has been a citizen and resident of Lincoln County, North Carolina. He was, at all relevant times, a licensed North Carolina law enforcement officer, employed by the State Highway Patrol Division of the North Carolina Department of Public Safety, and is being sued in his individual and official capacity.

5. Upon information and belief, Defendant Brian Matthew Black (hereinafter, "Defendant Black") is and at all relevant times has been a citizen and resident of Lincoln County, North Carolina. He was, at all relevant times, a licensed North Carolina law enforcement officer, employed by the State Highway Patrol Division of the North Carolina Department of Public Safety, and is being sued in his individual and official capacity.

6. Upon information and belief, Defendant Joshua Lee Craig (hereinafter, Defendant Craig") is and at all relevant times has been a citizen and resident of Catawba County, North Carolina. He was, at all relevant times, a licensed North Carolina law enforcement officer, employed by the State Highway Patrol Division of the North Carolina Department of Public Safety, and is being sued in his individual and official capacity.

7. Upon information and belief, Defendant Chuck Lee (hereinafter, "Defendant Lee") is and at all relevant times has been a citizen and resident of the Catawba County, North Carolina. He was, at all relevant times, a licensed North Carolina law enforcement officer, employed by the State Highway Patrol Division of the North Carolina Department of Public Safety, and is being sued in his individual and official capacity.

8. The Defendants are all "persons" within the meaning of the Civil Rights Act of 1871, 42 U.S.C. § 1983, and each has the capacity to be sued for the claims presented in this action. At all times relevant hereto, the actions and omissions of the Defendants that are the subject of this Complaint were undertaken while acting under color of state law, statute, ordinance, regulation, custom or usage.

**FACTS**

9. At approximately 4:30 p.m. on February 28, 2018, the Plaintiff arrived at his home on Sorrells-Baxter Road, in Lincoln County, in his 2008 Toyota Matrix.

10. The Plaintiff, a 69-year-old disabled veteran, had received a phone call from his wife, Suzanne "Susie" Baxter, informing him that there were state troopers at their home who were looking for his son, Travis, and wanted to speak to him.

11. The Plaintiff had been on an errand to the grocery store to buy milk, but left the store parking lot to return home before he had a chance to go inside.

12. The Plaintiff arrived at his house and pulled his 2008 Toyota Matrix into the front yard, where six State Highway Patrol vehicles were parked, belonging to the four Defendants, and State Troopers Terry Paul Neal (Defendant Neal's son) and Zachary Emil Beam.

13. The Plaintiff stepped out of his car and said: "What is going on?"

14. He was immediately stopped by Defendant Josh Craig and Defendant Randall Neal and Defendant Craig asked him if he knew where Travis was.

15. The Plaintiff told Defendant Craig and Defendant Neal that Travis was supposed to be in Kannapolis, Maryland, selling insurance, but that Travis' grandmother had called him earlier that afternoon and asked him to come and get Travis from her house and told him that Travis had been drinking.

3

16. The Plaintiff informed them that he went to pick up Travis from his grandmother's house and drove him back to his house and let him out on the road near his house at around 3:00 p.m.

17. Travis Wayne Baxter's house is located at 3073 Sorrells-Baxter Road, less than a mile away and down the road, to the west, from the Plaintiff's house.

18. Unknown to the Plaintiff at that time, Travis had been in a single-car accident earlier that day. A female was driving a truck in which Travis was a passenger, and she was injured after driving into a bridge railing.

19. The Plaintiff told Defendant Craig and Defendant Neal that that if Travis wasn't at his house, then he didn't know where he was.

20. Defendant Craig responded: "You're a liar, and a half lie is as bad as a lie."

21. The Plaintiff responded: "No sir. I'm being truthful."

22. Defendant Craig said: "What's that in your right hand?"

23. The Plaintiff responded: "It's my car keys."

24. Defendant Craig said: "No, it's a weapon!"

25. The Plaintiff said, "I'm sorry," and put his keys in his front pants pocket.

26. Defendant Neal said: "I am going to search you."

27. Defendant Neal then took the Plaintiff's car keys and a folded pocket knife out of his front pants pocket.

28. Defendant Neal handed the Plaintiff's car keys and folded pocket knife to the Plaintiff's wife, Susie Baxter, who was standing nearby.

29. The Plaintiff asked: "Am I under arrest for anything?"

30. Defendant Craig said: "Yes, for obstruction of justice."

31. The Plaintiff responded: "Sir, I need to call my attorney."

32. Defendant Craig said: "No, you're not calling an attorney."

33. Defendant Neal said: "You have no right to an attorney."

34. At that point, the Plaintiff walked past Defendant Josh Craig and Defendant Randall Neal toward the front porch of his house.

35. Defendants Chuck Lee and Brian Black moved to stop the Plaintiff and keep him from going onto his porch, and Defendants Craig and Neal closed in from behind, surrounding him.

36. During this questioning, the Plaintiff at all times kept his arms down at his sides and did not threaten any of the Defendants or make any movements towards them with either arm.

37. At that point, Defendant Black suddenly and without warning punched his right-hand index finger into the Plaintiff's mouth, injuring him and drawing blood from his lip and tongue.

38. The Plaintiff told Defendant Black that if he punched his finger in his mouth again that he would bite it off.

39. The Plaintiff then told all of the Defendants that if they didn't have warrants he wanted them to leave his yard.

40. Defendant Lee then intentionally scratched the Plaintiff's blue 2008 Toyota Matrix with a car key, making a scratch mark in the paint on both of the driver-side doors.

41. A photograph showing the scratch made by Defendant Lee with a key on the Plaintiff's blue Toyota Matrix is attached hereto and marked Exhibit 1.

42. The Plaintiff said to Defendant Neal: "He just keyed my car."

43. Defendant Neal replied: "It's just a little scratch."

44. The Plaintiff then told his wife: "Susie, go in the house and call the F.B.I."

5

45. When he said that, Defendant Neal gave the other Defendants a signal by turning both hands into a thumbs-down position.

46. At that point, the Defendants grabbed the Plaintiff, picked him up, and threw him to the ground.

47. Defendant Black put the Plaintiff into a tight choke-hold, and said: "This is how they taught me in school!"

48. At about the same time, Defendant Lee grabbed the Plaintiff's left hand and fingers and pulled and twisted his left hand and arm, and then put his foot or knee into the Plaintiff's back as he pulled his arm in the opposite direction, which was very painful.

49. Defendant Neal also placed a metal handcuff on the Plaintiff's right wrist and then started sliding the handcuff up and down his forearm and yanking down on the handcuff multiple times so that it repeatedly collided against his right wrist and hand, which was very painful.

50. A photograph showing the scrapes bruises on the Plaintiff's right arm caused by Defendant Neal's malicious conduct is attached hereto and marked <u>Exhibit 2</u>.

51. Defendant Craig also started punching the Plaintiff, who was unable to defend himself, with both arms being held behind his back by Defendants Lee and Neal, and with his head in a choke-hold by Defendant Black.

52. Defendant Black was choking the Plaintiff so hard that he couldn't breathe, and he said out loud, as least three or four times: "Can't breathe! Can't breathe! Can't breathe!"

53. At that point, the Plaintiff and his wife both thought that the Defendants were trying to kill him.

54. When the Plaintiff told his wife to go inside and call the F.B.I., she had started into the house. Defendant Neal told his son, Trooper Terry Paul Neal: "Get her!"

55. Terry Paul Neal followed Susie into the house and stepped on her foot, fracturing several bones and tearing ligaments.

56. She said to him: "What the hell are you doing in my house?"

57. Terry Paul Neal responded: "I thought you were coming in to get a gun."

58. She said: "Are you crazy? My four-year-old grandson is right here."

59. At that point, the Plaintiff's grandson had come out of the house and saw his grandfather being beaten up by the Defendants in his own front yard.

60. The Plaintiff was then stood up by the Defendants and placed into handcuffs and put in the back of Defendant Lee's patrol vehicle.

61. Terry Paul Neal then asked Susie again if she knew where Travis was and she said: "If he's not at his house, then we don't know where he is."

62. Terry Paul Neal asked her who owned that house, and she said: "We do." He asked her if she would go over there and let them in, and she said that she would but that she didn't want her grandson to see the troopers go in the house and that she would open the door and then leave so they could go inside.

63. Terry Paul Neal agreed to this and Susie got Collin and put him in their car and led the Defendants down the road to Travis' house. At that point, Collin was very upset and was crying.

64. The Defendants followed Susie and Collin less than a mile down the road to Travis' house, with the Plaintiff handcuffed in the backseat of Defendant Lee's patrol car.

65. After opening the door of Travis' house, Susie left and drove Collin back home.

66. The Plaintiff then saw several of the Defendants go inside and come out with his son, Travis, in handcuffs and wearing boxer shorts. Travis was exactly where the Plaintiff and his wife had told the Defendants that he was.

7

67. The Plaintiff was subsequently charged with resisting, delaying or obstructing a public officer discharging or attempting to discharge a duty of his office, in violation of N.C.G.S. § 14-233, and communicating threats, in violation of N.C.G.S. § 14-277.1.

68. The Plaintiff was released by the Criminal Magistrate on a written promise to appear and, the next day, sought medical treatment for his injuries at the VA hospital.

69. During the night after the incident, and before he went to the hospital, the Plaintiff's throat was in severe pain and his Adam's apple felt like it was out of place from being choked; he manipulated it back into place with his right hand.

70. At the trial in Lincoln County District Court, the Plaintiff was acquitted of communicating threats but was convicted by District Court Judge Meredith Shuford of resisting, delaying or obstructing a public officer.

71. Judge Shuford indicated that she found that the Plaintiff had "delayed" the officers in discharging their duties, even though everything that he had told them was truthful.

72. After the trial, Judge Shuford exchange a "high five" with Defendant Randall Neal in the hallway outside the courtroom.

73. The Plaintiff subsequently appealed the district court's judgment to Superior Court. At the time of the filing of this Complaint, Plaintiff's appeal is still pending in Lincoln County Superior Court.

74. As a consequence of the Defendants' wrongful acts and omissions described herein, the Plaintiff suffered painful bodily injuries and emotional distress, in addition to damage to his personal property.

## FIRST CAUSE OF ACTION
## VIOLATION OF FEDERAL CIVIL RIGHTS

75. Plaintiff re-alleges and incorporates by reference each and all of the allegations stated in Paragraphs 1 through 74 of this Complaint as if fully set forth herein.

76. In committing the acts alleged herein, the Defendants acted under color of state law to deprive the Plaintiff of certain constitutionally protected rights under the Fourth and Fourteenth Amendments to the Constitution of the United States including, but not limited to:

    a) the right to be free from unreasonable searches and seizures;

    b) the right to not be deprived of liberty without due process of law; and

    c) the right to be free from the excessive use of force.

77. As a direct and proximate result of the violations of the Plaintiff's constitutional rights by the Defendants, the Plaintiff suffered general and special damages as alleged in this Complaint and is entitled to relief under 42 U.S.C. § 1983.

78. The conduct of the Defendant state troopers was done with reckless or callous indifference to the federally protected rights of the Plaintiff and of such a nature that punitive damages should be imposed in an amount commensurate with the wrongful acts alleged herein, under 42 U.S.C. § 1983.

## SECOND CAUSE OF ACTION
## USE OF EXCESSIVE FORCE IN VIOLATION OF
## THE FOURTH AMENDMENT AND 42 U.S.C. § 1983

79. Plaintiff re-alleges and incorporates by reference each and all of the allegations stated in Paragraphs 1 through 74 of this Complaint as if fully set forth herein.

80. Plaintiff was seized and detained by the Defendant state troopers who exerted physical control over him through means intentionally applied, including binding his arms together behind his back with handcuffs.

81. In the course of seizing and detaining the Plaintiff, the Defendants unnecessarily and maliciously injured the Plaintiff.

82. The force used by the Defendants to subdue the Plaintiff was excessive and unreasonable under the circumstances, in violation of the Plaintiff's rights under the Fourth Amendment of the Constitution of the United States.

83. Plaintiff's rights under the Fourth Amendment were sufficiently clear that a reasonable law enforcement officer in each of the Defendants' position would have understood that what he was doing violated those rights.

84. The Defendants' violation of the Plaintiff's rights under the Fourth Amendment and 42 U.S.C. § 1983 directly and proximately caused the Plaintiff to suffer painful physical injuries, emotional distress, and medical expenses.

## THIRD CAUSE OF ACTION
### ASSAULT AND BATTERY

85. Plaintiff re-alleges and incorporates by reference each and all of the allegations stated in Paragraphs 1 through 74 of this Complaint as if fully set forth herein.

86. The Defendants' actions intended to cause, and did cause, the Plaintiff to reasonably apprehend the imminent threat of injury by the Defendants under circumstances indicating that they had the ability to inflict such injury.

87. The Defendants also acted for the purpose of causing harmful or offensive contact with the Plaintiff, when they knew or reasonably should have known that such contact was substantially certain to result from their conduct.

88. The Defendant officers also acted in reckless disregard as to whether their actions would cause harmful or offensive contact with the Plaintiff, when they knew or reasonably should have known that such contact was substantially certain to result from their conduct.

10

89. The Defendants' actions in threatening imminent injury and causing harmful or offensive contact with the Plaintiff were done without justification, as the Plaintiff was at all times unarmed and was not threatening any of the Defendants and did not pose a threat to any of them.

90. Such conduct by the Defendants constitutes assault and battery under the common law of North Carolina, which directly and proximately caused the Plaintiff to suffer painful physical injuries, emotional distress, and medical expenses.

91. Such conduct by the Defendants was willful, wanton, and malicious, which pierces the veil of public official immunity.

92. Such conduct by the Defendants also entitles the Plaintiff to recover punitive damages, under Chapter 1D of the North Carolina General Statutes, to punish the Defendants for their egregiously wrongful acts and to deter the Defendants and others from committing similar wrongful acts in the future.

## FOURTH CAUSE OF ACTION
## MALICIOUS CONDUCT

93. Plaintiff re-alleges and incorporates by reference each and all of the allegations stated in Paragraphs 1 through 74 of this Complaint as if fully set forth herein.

94. The Defendants' actions were done willfully, wantonly, contrary to a duty of conduct imposed by law, and were intended to be injurious to the Plaintiff.

95. The Defendants intended to injure the Plaintiff when they punched him in the mouth, threw him to the ground, put him in a choke hold, punched him in the back, pulled and twisted his arms and fingers behind his back, and pulled a metal handcuff up and down his right arm multiple times causing it to strike his wrist.

96. The Defendants' actions were also so reckless, or so manifestly indifferent to the consequences, as to justify a finding of willfulness and wantonness equivalent in spirit to an actual

intent. Such conduct by the Defendants constitutes malice under the common law of North Carolina, which directly and proximately caused the Plaintiff to suffer painful physical injuries, emotional distress, and medical expenses.

97. Such conduct by the Defendants also entitles the Plaintiff to recover punitive damages, under Chapter 1D of the North Carolina General Statutes, to punish the Defendants for their egregiously wrongful acts and to deter the Defendants and others from committing similar wrongful acts in the future.

## FIFTH CAUSE OF ACTION
## MALICIOUS DAMAGE TO PERSONAL PROPERTY

98. Plaintiff re-alleges and incorporates by reference each and all of the allegations stated in Paragraphs 1 through 74 of this Complaint as if fully set forth herein.

99. The Plaintiff was the titled owner of the blue 2008 Toyota Matrix at the time Defendant Lee intentionally scratched it with a car key.

100. Defendant Lee actions were willful, wanton, contrary to a duty of conduct imposed by law, and intended to be injurious to the Plaintiff's property.

101. Such conduct by Defendant Lee was unauthorized and without justification and constitutes malicious damage to personal property and/or trespass to chattels under North Carolina law.

102. Such conduct by Defendant Lee directly and proximately caused the Plaintiff to suffer compensatory damages.

103. Plaintiff is also entitled to recover punitive damages from Defendant Lee as a result of his malicious damage to property, under Chapter 1D of the North Carolina General Statutes, to punish him for his egregiously wrongful acts and to deter him and others from committing similar wrongful acts in the future.

12

## SIXTH CAUSE OF ACTION
## VIOLATION OF STATE CONSTITUTIONAL RIGHTS

104. Plaintiff re-alleges and incorporates by reference each and all of the allegations stated in Paragraphs 1 through 74 of this Complaint as if fully set forth herein.

105. As a direct and foreseeable result of the Defendants' actions, the Plaintiff was subjected to unreasonable and excessive use of force during an arrest and was therefore deprived of rights guaranteed to him under Article I, §§ 19 and 21 of the North Carolina Constitution.

106. As a direct and foreseeable result of the Defendants' actions in violation of his state constitutional rights, the Plaintiff suffered compensatory damages, including, but not limited to, painful physical injuries, emotional distress, and medical expenses.

107. Plaintiff pleads this cause of action against the Defendants in their official capacities as an alternative remedy, should any of Plaintiff's other state law claims be barred, in whole or in part, by principles of immunity.

WHEREFORE, Plaintiff respectfully prays for the following relief:

1. That this Court enter judgment declaring that Plaintiff's federal constitutional rights were violated by the Defendants, pursuant to 28 U.S.C. § 2201 – 2202.

2. That Plaintiff recover compensatory damages from the Defendants, jointly and severally, in their individual capacities pursuant to 42 U.S.C. § 1983 and the Fourth and Fourteenth Amendments for violation the Plaintiff's right to be free from unreasonable and excessive force.

3. That Plaintiff recover punitive damages from the Defendants, jointly and severally, in their individual capacities pursuant to 42 U.S.C. § 1983 for their unreasonable and excessive use of force that was done with reckless or callous indifference to the federally-protected rights of the Plaintiff.

4. That Plaintiff recover compensatory damages from the Defendants, jointly and severally, in their individual capacities based on his claim for assault and battery.

5. That Plaintiff recover punitive damages from the Defendants, jointly and severally, based on his claim of willful, wanton, and/or malicious assault and battery.

6. That Plaintiff recover compensatory damages from the Defendants, jointly and severally, in their individual capacities based on his claim for malicious conduct.

7. That Plaintiff recover punitive damages from the Defendants, jointly and severally, in their individual capacities based on his claim of malicious conduct.

8. That Plaintiff recover compensatory damages from Defendant Lee, based on his claim for malicious damage to Plaintiff's personal property.

9. That Plaintiff recover punitive damages from Defendant Lee, based on his claim of malicious damage to Plaintiff's personal property.

10. That Plaintiff recover compensatory damages from the Defendants, jointly and severally, in their official capacities, based on his claim for violation of rights guaranteed to him under the North Carolina Constitution.

11. That Plaintiff be awarded his reasonable attorneys' fees pursuant to 42 U.S.C. § 1988(b), and as otherwise allowed by law.

12. That Plaintiff be awarded his costs and expenses of this action.

13. That pre-judgment interest and post-judgment interest on all monetary relief awarded to the Plaintiff be included in the judgment.

14. For a jury trial on all issues so triable.

15. For such other and further relief that the Court deems appropriate.

THIS the 11th day of February, 2021.

    s/ Stephen P. Agan
    Stephen P. Agan
    NC Bar No. 35763
    Attorney for Plaintiffs
    Hyler & Agan, PLLC
    38 Orange Street
    Asheville, NC 28801
    Phone: (828) 254-1070
    Facsimile: (828) 254-1071
    E-mail: steve@hylerandagan.com

    s/ George B. Hyler, Jr.
    George B. Hyler, Jr.
    NC Bar No. 5682
    Attorney for Plaintiffs

Hyler & Agan, PLLC
38 Orange Street
Asheville, NC 28801
Phone: (828) 254-1070
Facsimile: (828) 254-1071
E-mail: george@hylerandagan.com



**Exhibit 1**



**Exhibit 2**